## KALLE KOIVULA v. ADRIATIC MINING COMPANY.[1]

June 21, 1912.

.Nos. 17,512—(127).

**Negligence of master — evidence.**

> Evidence considered, and *held* sufficient to sustain a finding of the jury
> that the defendant mining company was guilty of negligence in failing to
> provide the plaintiff, its servant, with a safe place in which to work, that
> the injuries complained of were caused by the defendant's failure in this
> regard, and that the plaintiff was not guilty of contributory negligence and
> did not assume the risk.

**Assignments of error.**

> Certain assignments of error considered, and *held* to involve no reversible
> error.

Action in the district court for St. Louis county to recover $20,000
for personal injuries. The substance of the complaint is stated in
the opinion. The answer alleged that on and prior to November
18, plaintiff had been employed in defendant's mine; that as a result
of a fall of ore on or about that date, plaintiff received a slight injury
which did not produce any external indication and alleged plain-
tiff's injury was the result of his own carelessness; or the result of a
risk. which was assumed by him. The reply was a general denial.

[1] Reported in 136 N. W. 856.

The case was tried before Ensign, J., who at the close of the evidence denied defendant's motion for a directed verdict and a jury which returned a verdict in favor of plaintiff for $7,800. From an order denying defendant's motion in the alternative for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Spencer & Marshall,* for appellant.

*William E. Culkin* and *John E. Samuelson,* for respondent.

PHILIP E. BROWN, J.

Action for personal injuries alleged to have been caused by the negligence of the defendant while the plaintiff was working for it in a mine. The case was tried to a jury, and the plaintiff had a verdict. This is an appeal from an order denying the defendant's motion for judgment notwithstanding the verdict or for a new trial.

Evidence was received on the trial sufficient, if believed, to warrant the jury in finding the following facts:

On and prior to November 18, 1910, the date of the accident, the defendant was the owner and operator of an iron mine in St. Louis county, known as the Adriatic. The mining was conducted wholly underground, by means of drifts, cross-cuts, and shafts. The mine was wet, and the stability of the drifts was supposed to be secured by timbering, consisting of upright timbers and cross-caps, on which timbers or laggings were placed for the purpose of preventing cave-ins. Before the accident, a long chamber had been excavated, leading away from one of the shafts. This chamber or passage was called the main drift, and was considerably below the surface. It was timbered and contained a track, and was used as a main avenue for the conveyance of ore to the shaft. About November 1, 1910, a cross-cut was started at right angles to the main drift and about ninety feet from the shaft. The plaintiff, assisted by other miners also employed by the defendant, worked in making this cross-cut. They made an opening between the upright posts of the main drift, and ore was removed from this side opening for some ten or fifteen feet at right angles to the main drift, and at the time of the accident there had been excavated a space of the usual width of a drift and

somewhat higher than the lagging of the main drift, especially at the point where the cross-cut branched off therefrom.

The plaintiff and his partner had been working in this cross-cut part of the time during the three days before the day on which the accident occurred. On the first of these days, the plaintiff and his partner were engaged in tramming dirt; the second, tramming ore which others had blasted; and on the morning of the third day they placed one set in position, consisting of two perpendicular posts placed in the cross-cut, one on each side, with a cap on the posts, stretching athwart the cross-cut and at a distance of about four or five feet from the main drift; and in the afternoon of this day they commenced to lag or block up the sides with timbers. When they left this work that afternoon, they had placed one row of lagging on the top; but there remained an open space above the lagging, not blocked up, and this space adjoined the main drift. All of this work was done under and in accordance with the instructions of the shift boss, and the work of lagging was done and left as this boss directed.

The laggings on top, in the cross-cut, extended to and were placed on the top of the laggings in the main drift. Thereafter, during the remainder of the afternoon, these men drilled holes and blasted in the cross-cut, quitting at about six o'clock p. m. The main drift was excavated to the point where the cross-cut commenced, and beyond, some three months prior to the happening of the accident; and while it was timbered and lagged by direction of the defendant's boss superintending its construction, an open space was unnecessarily left above the lagging, unblocked, of which the plaintiff was unaware. This made this drift dangerous, and rendered the roof thereof liable to cave in. The opening over the lagging in the cross-cut above mentioned did not connect with the opening over the main drift referred to; the latter being concealed by the lagging therein.

Shortly after seven o'clock a. m. of the fourth day the plaintiff and his partner came to the cross-cut to work. The plaintiff did not observe that anything had been done on the timbering since the previous evening, but noticed that some dirt had been taken out and that there had been a blast just before he came. Almost im-

mediately after his arrival a body of ore dropped from over the top of the main drift, forced in the set standing in the cross-cut, and buried the plaintiff and his partner, and the plaintiff suffered the injuries for which he herein seeks to recover. The plaintiff was, at the time of the accident, almost twenty-eight years old, and had worked in this mine for about six months, and at underground mining prior thereto for about twenty-two months.

1. The complaint charged, and the plaintiff claimed on the trial, that the defendant was negligent in several particulars, one of which was that it was negligent in leaving an unblocked space above the laggings in the main drift at the point where the cross-cut opened out of the main drift, that this failure to block the main drift ought to have been known by the defendant, in the exercise of reasonable diligence, and that such failure caused the accident; the ultimate claim of the plaintiff being that the proximate cause of his injuries was the failure of the defendant to furnish him a reasonably safe place in which to work. The defendant denied that the main drift was not properly blocked, and also all other claims of its negligence, and contended that the proximate cause of the accident was the failure of the plaintiff to use ordinary care in timbering the top of the cross-cut between the first set placed therein and the main drift, and, furthermore, that the plaintiff was guilty of contributory negligence and assumed the risk.

The court excluded from the consideration of the jury all the claims made on the part of the plaintiff of the defendant's negligence, except the claim as to its alleged failure to furnish the plaintiff with a safe place in which to work, and charged, in effect, that if they found that the defendant failed to exercise ordinary care in providing the plaintiff with a reasonably safe place in which to work, and that such failure was the proximate cause of the accident and of the plaintiff's injuries, and, further, if the plaintiff was not himself guilty of contributory negligence and had not assumed such risk, then he should recover; otherwise not.

It is obvious that, as far as the plaintiff's claim of negligence so submitted to the jury is concerned, the vital question of fact was:

Did the ore fall because of the defendant's failure to block the top of the main drift at the place where it and the cross-cut were connected? If so, and if by the exercise of reasonable diligence the defendant should have known of its failure in this regard, then it failed in its duty to the plaintiff to use reasonable care to furnish a reasonably safe place in which to work, and was guilty of negligence. We hold that this question, and also the other issues submitted, viz., contributory negligence and assumption of risk, were for the jury to determine; and unless the court committed reversible error on the trial in some other respect, we find no occasion for interfering with the verdict.

2. We have examined the defendant's assignments of error with care. The first and second have already been disposed of. The third, fourth, tenth, and fourteenth were not argued, and, we think, are without merit. We find no evidence in the record to warrant the giving of the ninth request to charge, to the refusal of which the fifth assignment is directed. If that part of the charge to which the sixth assignment is directed was error, it was without prejudice. Assignments 7, 8, and 9 refer to the instructions concerning contributory negligence and assumption of risk. We find no reversible error therein. Neither do we find such in the rulings concerning the admission, exclusion, and striking out of testimony, upon which the eleventh, twelfth, and thirteenth assignments are predicated.

Judgment affirmed.